# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

### THE LIFE INSURANCE COMPANY OF VIRGINIA V. MYRENE G. BROCKMAN.

June 12, 1939.

Record No. 2070.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Harris, Harvey & Brown,* for the plaintiff in error.

*Carter & Williams,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This action was instituted against the Life Insurance Company of Virginia to recover $1,000, the amount of a policy issued on the life of Richard S. Brockman for the benefit of his wife, Myrene G. Brockman. The jury returned a verdict for plaintiff, on which the trial court entered judgment. To the judgment of the trial court, the Life Insurance Company of Virginia obtained this writ of error.

It appears that Richard S. Brockman, for some time immediately prior to his death, had been on a drinking spree. While on this spree he had a quarrel with his wife, who, on January 3, 1938, left home and went to a neighbor's to spend the night. Early on the morning of January 4, 1938, Brockman's body was found partly clothed, lying on a pallet in a small bathroom with the windows and doors shut. Illuminating gas was escaping from a small gas stove used for the purpose of heating the bathroom. From the evidence introduced the jury could have found

that death was the result of alcoholic poisoning, or that it was due to asphyxiation from illuminating gas. If the jury believed that death was caused by asphyxiation, then it became necessary for them to determine whether the accused turned on the gas jet to the stove with intent to commit suicide. Defendant concedes that the evidence in the record was sufficient to carry each of these questions to the jury, hence the petition for a writ of error concludes with a prayer asking that a new trial be granted for errors committed by the trial court in the admission and exclusion of evidence, and for erroneous instructions given to the jury.

The first error assigned is to the ruling of the court excluding a sworn statement, signed by Dr. H. A. Wiseman, from the jury's consideration.

Defendant requires three sets of interrogatories to be answered on forms furnished by it in order to establish proof of death. The set of these interrogatories is framed to be answered by claimant under the policy, one set by the attending physician, and one set by some responsible third person who knew the deceased. Each set of interrogatories is on a printed form furnished by defendant with blank space after the questions for the answers of those signing. In claimant's "Statement No. 1," introduced in evidence and containing the signature of Myrene G. Brockman, there is found this printed question, "Cause of death," and the written answer, "See Statement No. 2." Defendant offered to introduce in evidence what it contended was "Statement No. 2," referred to in the set of interrogatories signed by claimant. This statement, entitled "No. 2 Physician's Statement," is signed by "H. A. Wiseman, M. D.," and contains the printed question, "What was the immediate cause of death?" and the written answer, "Asphyxiation from illuminating gas."

[1] Plaintiff objected to the introduction of this statement of Dr. Wiseman, on the ground that it had not been obtained by her, and that she knew nothing of its contents. When this objection was raised, E. W. Trainum, an agent for defendant, was asked a direct question as to how this

Wiseman statement was obtained, and replied, "The physician's statement by Dr. Wiseman was obtained by one of my representatives in the office, and sent to our home office." Thereupon the trial court ruled that the statement was not admissible, and no further evidence was introduced to show that plaintiff had ever seen or heard of it. The mere statement of the circumstances under which this certificate was obtained shows conclusively that the ruling of the trial judge thereon was correct.

Plaintiff introduced, as part of its proof of death sent to the insurance company, a certificate signed by Dr. J. M. Robinson, the family physician, in which it was stated that the cause of death was "apparently gas asphyxiation." There was no objection to this certificate and it was submitted to the jury for its consideration.

Defendant's attorney, on cross examination, asked Dr. Robinson whether he was still of the opinion that death was apparently due to gas asphyxiation, to which he replied that he was. On re-direct examination the doctor stated that his examination of the body was confined to the one purpose of ascertaining whether life was entirely extinct. When he found that it was, after suggesting that the coroner be called, he immediately left Brockman's home. His opinion as to the cause of death was not a professional one, but was based entirely on conditions and circumstances which could be observed by a layman as well as a doctor. The trial court thereupon sustained a motion to exclude the doctor's medical opinion as the cause of death.

██ If an opinion of an expert is not based upon his special training and knowledge, such opinion is of no more help to the jury than that of a layman. The jury was given the benefit of every pertinent fact known to and observed by Dr. Robinson when he entered the room and examined the body. There is no merit in this, the second assignment of error.

Dr. H. A. Wiseman, as coroner of the city of Danville, examined the body about 9:00 a. m., January 4, 1938, an hour or more after the body had been viewed by Dr. Robin-

son. He was called as a witness for defendant and gave a detailed statement of the facts observed by him, and his professional opinion as to the cause of death. During his examination the defendant offered as evidence Dr. Wiseman's sworn statement as a coroner, certified by R. W. Garnett, registrar for the city of Danville, in which it appeared that Dr. Wiseman had stated that death was due to "asphyxiation from illuminating gas, self-administered," and that Brockman had committed "suicide."

The trial court admitted the certificate of death but declined to admit the medical certificate signed by the coroner. This ruling constitutes defendant's third assignment of error.

Defendant contends that the medical certificate of either the attending physician or a coroner, executed according to the provisions of Code, sections 1567 and 1568, is admissible in evidence under the provisons of Code, section 1580. Section 1567 requires a medical certificate of death to be signed by the attending physician. This physician is directed to set forth certain facts not pertinent to the question now under consideration, and the section concludes with the following directions: "Cause of death, which may be the result of either disease or violence, shall be carefully defined; and, if from violence, the means of injury shall be stated and whether (probably) accidental, suicidal or homicidal."

Section 1580 provides that "the *State registrar* shall, upon request, furnish any applicant a certified copy of the record of any birth or death registered under the provision of this act * * * and, when properly certified by the *State registrar* to be a true copy thereof, shall be *prima facie* evidence in all courts and places of the facts herein stated." (Italics supplied.)

Dr. Wiseman, the coroner, was called as a witness for defendant, and was examined and cross-examined at length on all matters pertinent to the issues raised. From his own testimony it appeared that he had no personal knowledge as to whether the death was accidental or other-

wise. His professional opinion was that death was due to asphyxiation. His opinion that Brockman committed suicide was based on the statements of bystanders, some of whose names he did not remember. A certificate of death signed by a coroner, containing the statement that John Doe (then on trial, charged with murder) inflicted the blow from which death resulted, would not be admissible in evidence as *prima facie* proof against the accused. The statute provides that the certified copy of the record shall be admissible and treated as *prima facie* evidence of the *facts* stated therein. It does not provide that a mere opinion shall be *prima facie* proof of the fact to be determined.

█ The court permitted the jury to have the benefit of the doctor's professoinal opinion as to the cause of death, but it did not permit the doctor to state before the jury that he thought Brockman committed suicide. The opinion that the court excluded from the jury was based partly upon observation and partly upon opinions of unnamed bystanders. The court was correct in excluding it from the jury.

"The statement of the attending physician in a proof of death would seem to be only necessary or valuable when the deceased has died from natural causes and has actually been attended by a physician. In such a case the insurance company has a right to know what the physican knows as to the cause of death. But in this case there was no attending physician, and the answer of Dr. Baylor, which is mere conjecture, shows that he knew no more about what caused the death than anyone else who saw the dead body. But be that as it may, Dr. Baylor was subsequently introduced as a witness by the defendant and interrogated fully on this point, as to what he knew of the deceased in every way, and what he meant by the language of the answer he gave in the affidavit mentioned. All that he knew was thus put completely and effectually before the jury and the defendant suffered no prejudice whatsoever from the action complained of." *South Atlantic Life Ins. Co.* v. *Hurt's Adm'x*, 115 Va. 398, 404, 405, 79 S. E. 401, 403.

The court gave three instructions, two in the form requested by plaintiff, and amended the one offered by defendant. These instructions told the jury that where circumstantial evidence was relied upon to establish suicide, as a defense to an action on a life insurance policy, the law presumed that death resulted from a natural cause, and that the burden was upon defendant to establish suicide by clear and satisfactory evidence to the exclusion of any reasonable hypothesis consistent with death from natural or accidental causes.

Defendant objected to these instructions on the ground that the action was based upon a contract of insurance that did not purport to insure the life of Brockman in the event that he committed suicide within two years from the date of the policy, and that the burden was upon plaintiff to prove that death was due to some cause covered by the contract; and that, even if the burden of establishing suicide was upon defendant, this burden was carried when it established suicide by a mere preponderance of evidence. The refusal of the trial court to instruct the jury on the defendant's theory of the burden of proof constitutes the fourth and fifth assignments of error.

Defendant cites several cases which tend to support its theory. Among them are *Jefferson Standard Life Ins. Co.* v. *Clemmer,* 79 F. (2d) 724, 103 A. L. R. 171; *New York Life Ins. Co.* v. *Gamer,* 303 U. S. 161, 58 S. Ct. 500, 82 L. Ed. 726, 114 A. L. R. 1218; and *McDaniel et als.* v. *Metropolitan Life Ins. Co.* (W. Va.), 195 S. E. 597. However, the principles involved in the instruction given are supported by a long line of Virginia decisions. Among them are *Mutual Ins. Co.* v. *Marshall,* 157 Va. 427, 161 S. E. 61; *South Atlantic Life Ins. Co.* v. *Hurt's Adm'x,* 115 Va. 398, 79 S. E. 401; *Metropolitan Life Ins. Co.* v. *DeVault's Adm'x,* 109 Va. 392, 63 S. E. 982, 17 Ann. Cas. 27; *Life Ins. Co. of Va.* v. *Hairston,* 108 Va. 832, 852, 62 S. E. 1057, 1066, 128 Am. St. Rep. 989; *Virginia Fire & Marine Ins. Co.* v. *Hogue,* 105 Va. 355, 54 S. E. 8; *Cosmopolitan Life Ins. Co.* v. *Koegel,* 104 Va. 619, 52 S. E. 166.

■ Inasmuch as these principles have become the settled doctrine in Virginia, we find no reversible error in the instructions given.

*Affirmed.*