# Richmond

## LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE v. KATHLEEN V. DANIEL.

October 14, 1968.

Record No. 6731.

Present, All the Justices.

*Collins Denny, III; Thomas E. Crosley, Jr. (Mays, Valentine, Davenport & Moore,* on brief), for plaintiff in error.

*J. C. Hutcheson (Larry M. Jones,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was instituted by Kathleen V. Daniel, plaintiff, against the defendant, Life and Casualty Insurance Company of Tennessee, to recover the sum of $2,000 as the beneficiary under an accident policy issued by the defendant insuring Jesse M. Daniel for loss of life by "drowning or bodily injury effected solely through violent, external and accidental means and if such drowning or bodily injury is the direct, independent and proximate cause of death". The policy also provided, in an exclusion, reduction and limitation clause, that death caused "from self-destruction, while sane or insane" was excluded from coverage. Plaintiff claimed that the insured's death by drowning was within the terms of the policy. Defendant admitted death was caused by drowning but denied liability on the ground that the insured's death was caused by self-destruction and not by accidental means.

The case was tried by a jury, and at the conclusion of plaintiff's evidence the trial court overruled defendant's motion to strike out plaintiff's evidence. A similar motion was overruled at the conclusion of all the evidence. The jury returned a verdict for plaintiff in the amount sued for, and judgment was entered on the verdict. Defendant is here on a writ of error.

Defendant contends that the trial court erred (1) in instructing the jury that defendant had the burden of proving that the insured's death was caused by suicide and not by accidental means; and (2) in holding that the evidence supported the jury's verdict of accidental death.

The insured, who was 53 years of age, met his death by drowning in the Camp Pickett reservoir in Brunswick County, Virginia, on August 19, 1965. When his body was taken from the water in the late afternoon of that day it was fully clothed and unmarked. The watch of deceased was still on his wrist. Insured's automobile had been parked and locked on a pull-off on the east side of Route 46, approximately 30 to 40 feet from a high bank at the water's edge. The car had been there since at least 9 o'clock that morning. When the car doors were opened, the insured's hat was found upside down on the right front floorboard. Inside the hat were his folded glasses, which he was accustomed to wearing when working or driving, and a package of cigarettes, and covering them was a handkerchief.

Plaintiff testified that the insured left home early in the morning on Thursday, August 19th. It was not unusual for him to get up early. He had mentioned to her on Monday of that week that he was going to Crewe, Virginia, to get a muffler for his automobile, and also

stated that he had been thinking about getting a new car. She assumed he had gone to Crewe on the day of the drowning. He left some money on the bureau before leaving home, but it was not unusual for him to do that for deceased operated a store which was attached to their home, and plaintiff often assisted in its operation. She did not know of anything that was worrying her husband, and she knew of no reason he would intentionally take his life.

Plaintiff stated on cross-examination that on an occasion about two months prior to insured's death he said he was depressed and told her that he "would be just as well off dead or maybe up at the lake". After telling her that he left, but was back in five minutes. She said that her husband had made similar statements a few times over the years, but she did not pay any attention to them because, from the manner and the circumstances under which he made them, she did not believe he was serious.

The insured did not have a permit to fish in the reservoir, and so far as plaintiff knew he never went fishing. He could not swim.

The deputy sheriff testified that on the day of the drowning plaintiff told him that insured made the above quoted statement about two weeks before his death and that he stayed away from home all day on that occasion; and that insured would not get into a boat because he was afraid of the water. Plaintiff denied that she had made any of the alleged statements as related by the deputy sheriff.

The trial court instructed the jury that the drowning of deceased at the time under consideration established a presumption that such drowning was accidental, and unless such presumption is rebutted by the defendant, or other evidence in the case, they should find for the plaintiff; that the defendant, seeking to avoid payment of the policy on the ground that the insured's drowning was caused by suicide, had the burden of proving not just by a preponderance of the evidence, but by clear and satisfactory evidence, that the cause of death was suicide; and that when evidence of self-destruction is circumstantial, the defendant fails to overcome the presumption of accidental death unless the circumstances shown by the evidence exclude with reasonable certainty every hypothesis of accidental death.

Defendant contends that the instruction placing the burden of proving suicide on it is not applicable in the present case because there is a clear distinction between actions on ordinary life insurance contracts providing for the payment of stipulated benefits in the event of death, and contracts like the one here in which the insured event is death by

drowning or bodily injury effected solely through violent, external and accidental means.

It is the settled doctrine in Virginia, supported by a long line of decisions, that where circumstantial evidence is relied upon to establish suicide as a defense to an action on a life insurance policy, the law presumes that death results from a natural cause and the burden is upon the insurer to establish suicide by clear and satisfactory evidence to the exclusion of any reasonable hypothesis consistent with death from natural or accidental causes. See *Life Insurance Company* v. *Brockman*, 173 Va. 86, 93, 3 S. E. 2d 480, 483 (1939) and numerous cases cited.

■ Under the general rule, which we follow, a beneficiary who makes a death claim under an accident policy or the double indemnity clause of a life policy, has the burden of proving that the insured's death was caused by violent, external and accidental means within the terms of the policy. *General Accident, Fire & Life Assurance Corp.* v. *Murray*, 120 Va. 115, 126, 90 S. E. 620, 624 (1916); 29A Am. Jur., Insurance, § 1852, p. 914; 46 C. J. S., Insurance, § 1317 (2), p. 406.

■ The courts and commentators are in agreement that when death by external and violent means is proven, a presumption arises in favor of the beneficiary that the death was accidental, and the jury is required to find for the beneficiary unless there is evidence sufficient to justify a conclusion of suicide.

This presumption in favor of death by accidental means and against suicide has its basis in the love of life and the instinct of self-preservation, the fear of death, the fact that self-destruction is contrary to the general conduct of mankind, the immorality of taking one's own life and the presumption of innocence of crime. Aside from the fact that self-destruction is an unnatural act, it is an act which could constitute a deliberate fraud. For good and valid reasons, most courts have placed a full burden on those who interpose suicide as a defense, just as they have where fraud is relied upon as a defense. The presumption, however, is rebuttable and may be overcome by facts and circumstances which show that death was the result of suicide. It is when rebutting evidence is introduced that different theories have developed as to the operation and weight of the presumption.

Some courts have held that the presumption against suicide and in favor of accidental death is a procedural tool concerning evidence, which does not constitute evidence or possess probative force; that the presumption shifts the burden of coming forward with evidence, but never shifts the burden of persuasion; that the presumption disappears

when credible evidence is produced tending to show that death was the result of suicide; and that ordinarily the jury should not be told that there is a presumption against suicide. This view is commonly known as the Thayer theory. *New York Life Ins. Co.* v. *Gamer*, 303 U. S. 161, 58 S. Ct. 500, 82 L. ed. 726, 114 A. L. R. 1218 (1938); *Tyrrell* v. *Prudential Ins. Co. of America*, 109 Vt. 6, 192 A. 184, 115 A. L. R. 392 (1937); Wigmore on Evidence, 2d ed., Vol. IX, p. 286, § 2490, et seq.; Annots.: 103 A. L. R. 185; 158 A. L. R. 747, 748; 12 A. L. R. 2d 1264, 1323; 5 A. L. R. 3d 19, 64. Other courts have taken the view that the presumption is itself evidence or at least has evidentiary weight. *Mutual Life Ins. Co. of New York* v. *Maddox*, 221 Ala. 292, 128 So. 383 (1930); *Lewis* v. *New York Life Ins. Co.*, 113 Mont. 151, 124 P. 2d 579 (1942); *Wyckoff* v. *Mut. Life Ins. Co. of New York*, 173 Ore. 592, 147 P. 2d 227 (1944); Annots.: 103 A. L. R. 185, 191; 158 A. L. R. 747, 750; 12 A. L. R. 2d 1264, 1328; 5 A. L. R. 3d 19, 65, 66. Still other courts have utilized the presumption to shift the burden of proof to the insurer to establish that the death of the insured was due to suicide. *Dick* v. *New York Life Ins. Co.*, 359 U. S. 437, 79 S. Ct. 921, 3 L. ed. 2d 935 (1959); *Union Cent. Life Ins. Co.* v. *Sims*, 208 Ark. 1069, 189 S. W. 2d 193 (1945).

The nature of a presumption against suicide—whether it has evidentiary value—when and if it disappears—and its effect on the burden of proof, are questions upon which courts, text writers, legal commentators and professors of law have evinced much learning and erudition. The citation of authorities can be multiplied without end, and decisions can be found to support almost any course we might elect to follow.

In essence, the issue before us involves the effect and weight of a presumption against suicide, the proof necessary to overcome it, and who has the burden. We must decide whether the burden upon a defendant to establish suicide shall be the same in accident policy death claims as it is under a life policy.

The defendant urges that we follow *Jefferson Standard Life Ins. Co.* v. *Clemmer*, 79 F. (2d) 724, 103 A. L. R. 171 (4 Cir. 1935), which held that in an action upon an accident policy or the double indemnity provision of a life policy, the beneficiary has the burden of proving that death was caused by violent, external and accidental means, and as an element of such proof, the plaintiff must show that death was not by self-destruction which was intentional and not accidental.

The plaintiff contends, and the trial judge agreed, that we have decided the question before us, for in his opinion the trial judge said:

"The last case in Virginia that discusses the subject is *Harless, et al.* v. *Atlantic Life Ins. Co.*, 186 Va. 826, 44 S. E. 2d 430 (1947). The case was one in which the deceased was insured by defendant's insurance company on a life insurance policy with double indemnity for accidental death. The company defended on the grounds of suicide both as to the life policy and double indemnity. At the conclusion of all the evidence the court entered judgment for the defendant holding that the defendant had overcome the burden placed upon it to show suicide by clear and convincing evidence and to the exclusion of any reasonable hypothesis consistent with death from natural or accidental cause. The plaintiff appealed. The Supreme Court sustained the finding of the lower court. Again an attack was made upon the extreme burden placed upon insurance companies to show suicide. The court refused to modify the Virginia rule."

This court, in its opinion in *Harless*, quoted from the trial court there, as to why the evidence was stricken, as follows:

". . . That was done, the trial court said, because the circumstances shown in evidence were sufficient 'to overcome the burden which was placed upon the defendant to show (suicide) by clear and satisfactory evidence, and to the exclusion of any reasonable hypothesis consistent with death from natural or accidental causes,' and if the jury should return a verdict for the plaintiffs he would have to set it aside." 186 Va. 826, 828, 44 S. E 2d 430, 432.

Then, after citing and quoting with approval from *Brockman, supra*, as to the measure of proof required, we said:

"The defendant here urges that 'the extreme rule in Virginia should be clarified and modified' because it is confusing and creates 'an unhappy and unsatisfactory situation.' A similar argument was made by the defendant in the *Brockman Case* and rejected, with the statement that 'the principles involved in the instruction(s) given are supported by a long line of Virginia decisions,' and 'these principles have become the settled doctrine in Virginia.' (173 Va. 93, 94).

"We are not persuaded that this settled doctrine should now be unsettled. It is clear enough in its terms. Its application need not create an unhappy and unsatisfactory situation. If it makes for an unhappy litigant, that is not an unusual result with any rule, and a

different rule would not likely avoid that result. It is a rule that has been followed by many courts, though rejected by others. See annotation following *Jefferson Standard Life Ins. Co.* v. *Clemmer* (4 Cir., 79 F. (2d) 724), 103 A. L. R. 171, 185. Practically all courts recognize a legal presumption against suicide. They differ on the quantum of proof necessary to overcome the presumption and on whether the presumption should be given the force of evidence. It is no rare thing to require different degrees of proof to establish different facts. Proof of guilt must be beyond reasonable doubt; proof of fraud or unlawful act, or undue influence, and many others, must be clear and satisfactory, or clear and convincing (*Virginia Fire, etc., Ins. Co.* v. *Hogue*, 105 Va. 355, 54 S. E. 8; *Rudlin* v. *Parker, ante*, p. 647, 43 S. E. (2d) 918; Wigmore on Evidence, 3d Ed., sec. 2498, pp. 329 *et seq*.).

"The evidence here is to be tested by the rule established by our cases. If it is clear and satisfactory, and reasonable men should not disagree that it excludes every reasonable theory of death by accident, the action of the trial court was correct." 186 Va. 826, 829, 830, 44 S. E. 2d 430, 432.

In any analysis of *Harless*, we must bear in mind that the controversy there swirled around accidental death, the defense of suicide, the presumptions that follow therefrom, and the burden of proof placed on the respective litigants. Had we desired to adopt the reasoning of Judge Soper in *Jefferson Standard Life Ins. Co.* v. *Clemmer, supra*, we had an opportunity to do so. We did not adopt his reasoning—we expressly rejected it. True, the evidence in *Harless* showing suicide was so clear that the question became one of law. However, in measuring the evidence to determine if the defendant had overcome the presumption against suicide, the yardstick used in that accidental death case was the same test that was used by the trial judge in the case under review.

In the instant case Daniel's policy insured against death by drowning or bodily injury effected solely through violent, external and accidental means. It excluded death caused from self-destruction, while sane or insane. His beneficiary had the same burden to carry as did the plaintiff in *Harless*. The defendant there, as does the defendant here, claimed suicide. We said there that the test to be applied was whether the evidence of suicide "is clear and satisfactory, and reasonable men should not disagree that it excludes every reasonable theory of death by accident."

We therefore inferentially, if not explicitly, accorded a presumption against suicide the same effect in accidental death and double indemnity cases as in cases upon life insurance policies.

The reasoning and logic of our holding become apparent when an attempt is made to rationalize the imposition of a greater burden on the beneficiaries of one who seeks to protect them from the hazard of his death by accident, than on the beneficiaries of one who seeks to protect them from the hazard of his death through normal causes.

In each instance, the event or happening against which protection is sought is the death of the policyholder. Assuredly suicide is as abhorrent, as unlikely, or as much of an anathema to the man or woman who purchases accidental death insurance as to the individual who purchases an ordinary policy of life insurance. We would not invest the beneficiary of a life insurance policy with a firm presumption against suicide and only accord the beneficiary of an accidental death policy a lesser or disappearing presumption.

The anomaly of the situation is illustrated in an action to recover under a life policy with double indemnity where the defense is suicide. As to one-half of the amount sought to be recovered the plaintiff-beneficiary would have the benefit of a presumption against suicide, and the jury would be told that the defense would have to establish suicide by clear and satisfactory evidence to the exclusion of any reasonable hypothesis consistent with death from natural or accidental causes. As to the other one-half of the recovery sought, the plaintiff-beneficiary would still have the benefit of a presumption, but the trial judge would have to attempt to instruct the jury, when, and at what point, and under what circumstances, this presumption disappears, dissolves or fades out of the case. Assuming such an instruction could be framed, it is unreasonable to expect a jury of laymen to draw the fine distinctions that would be demanded of them.

The validity of *Harless* becomes more defensible when we apply it to the case under review. The issue here was clear-cut. It is admitted that the insured died by drowning. Was insured drowned as the result of an accident or was his death suicidal? There was no eyewitness to this tragedy. The case was based purely upon circumstantial evidence. This is not unusual. Accidents involving automobiles, motorboats and firearms often occur without an eyewitness. The only person present at the happening is the insured, who is killed. Without the benefit of a presumption against suicide there often could be no recovery by his beneficiary. Furthermore, it is never difficult to

find in the past life of an insured-decedent some incident or condition, a morbid remark, an idle threat or a peculiar action that indicates suicide.

The gist of the defendant's argument on one of its assignments of error is that a despondent remark or threat showed a motive on the part of Daniel for suicide, which together with certain physical facts, principally the finding of a hat, eyeglasses and cigarettes in a locked car, overcame the presumption against suicide, and that the presumption thereby disappeared and ceased to exist. If this were the case, the defendant should have prevailed on his motion to strike the plaintiff's evidence because the plaintiff's case of necessity rests on this presumption. The burden of proof rested with the plaintiff to show that death was caused by accidental means. Without the aid of the presumption, plaintiff could not have sustained the burden of proof.

A presumption against suicide is not evidence, but it does have probative or evidentiary value and does not just disappear when evidence is offered in opposition thereto. It is rebutted when the facts upon which it is based have been overcome by evidence to the contrary. It is conceded that evidence may be of such conclusive character that only one reasonable deduction can be drawn therefrom, in which event the presumption would be overcome and a verdict would be directed. That was the case in *Harless*—but it is not the case here.

If the presumption disappeared once evidence to the contrary appeared, there would be nothing for that evidence to controvert. The presumption should stand in the face of such evidence and be given weight in determining the fact question. When positive evidence appears to indicate suicide it stands on one side, and the evidence of the plaintiff-beneficiary, together with the presumption, on the other, and the trier of fact must weigh them both in determining the question.

We think that appropriate here are the observations made by Mr. Justice Black in his dissenting opinion in *New York Life Ins. Co. v. Gamer, supra*, where he said:

"Stripped of discussions of legal formulas designated as 'presumptions' and 'burden of proof,' the net result of the rule of 'disappearing presumptions' is that trial judges in Federal courts (irrespective of state rules) have the power to determine when sufficient 'substantial evidence' has been produced to justify taking from the jury the right to render a verdict on evidence which—had the judge not found it overcome by contradictory evidence—would have justified a verdict. The judge exercises this power as a 'trier of fact' al-

though evidence, previously introduced and sufficient to support a verdict, has neither been excluded nor withdrawn.

"Proof of death by external and violent means has uniformly been held to establish death by accident. The extreme improbability of suicide is complete justification for a finding of death from accident under these circumstances. While it has been said that this *proof of accidental death* was based on 'presumption,' in reality—whatever words or formulas are used—what is meant is that a litigant has offered adequate evidence to establish accidental death. To attribute this *adequacy of proof* to a 'presumption' does not authorize or empower the judge to say that this 'adequate proof' (identical with legal 'presumption') has 'disappeared.' If the evidence offered by plaintiff provides adequate proof of accidental death upon which a jury's verdict can be sustained, mere *contradictory* evidence cannot overcome the original 'adequate proof' unless the authority having the constitutional power to weigh the evidence and decide the facts believes the contradictory evidence has overcome the original proof. The *jury*—not the *judge*—should decide when there has been 'substantial' evidence which overcomes the previous adequate proof. . . ." 303 U. S. 161, 176, 58 S. Ct. 500, 505, 82 L. ed. 726 733, 114 A. L R. 1218, 1225 (1938).

The force of Justice Black's opinion is more pronounced when we consider that under federal practice, the judge is free to comment on the evidence and explain the allowable inferences and presumptions. What a trial court tells a jury about presumptions in a state court would have to be incorporated in an instruction, and we have alluded to the difficulties involved in attempting to deal with the concept of a disappearing presumption.

Accordingly, and consistent with what was said in *Harless*, we hold that a presumption against suicide shall be accorded the same effect in accidental death and double indemnity cases as is given the presumption in cases upon life insurance policies. Evidence to overcome such presumption must be clear and satisfactory and to the exclusion of any reasonable hypothesis consistent with death from natural or accidental causes. The presumption remains throughout the trial unless the evidence of suicide is so conclusive that only one reasonable deduction can be drawn therefrom, and it becomes a question of law for the court to decide. The jurors will weigh the evidence and test the persuasiveness of the facts proved on the issue of suicide, in the light of human experience, and the truth gained from

it, that under most circumstances a human being will not deliberately and intentionally destroy himself. As to the effect of such a presumption, we again refer to *Harless, supra,* where we said:

"The presumption against suicide is not a conclusive presumption. It is necessarily a rebuttable presumption, else suicide could not be proved in any case by circumstantial evidence. The evidence to overcome the presumption does not have to exclude the possibility of accident. It has only to exclude the reasonable theory of accident. If no reasonable theory of accident exists under the facts and circumstances shown by the evidence, then the presumption logically and legally falls. It cannot stand in the presence of evidence sufficient to show that the presumption is contrary to the truth. Evidence is sufficient to show that, under our rule, when it excludes every reasonable hypothesis of death from any other cause than suicide. [Citing cases.]" 186 Va. 826, 836, 837, 44 S. E. 2d 430, 436.

We agree with the trial court that under the evidence here the question of whether insured's death resulted from accident or suicide was a factual question for the jury, since reasonable men could disagree on the issue whether death was accidental or suicidal, and not one of law for the court. The instructions granted by the trial court were in accord with the views expressed in this opinion.

The judgment of the trial court is therefore

*Affirmed.*

I'ANSON, J., Dissenting

I do not agree with the holding of the majority opinion that the same burden of proof rule respecting suicide on life insurance policies is applicable to actions on accident policies and the double indemnity provisions of life policies, and that we "inferentially, if not explicitly" so held in *Brockman* and *Harless.*

The *Brockman* and *Harless* opinions do not even "inferentially" support such a conclusion. This court has not heretofore decided the issue involved.

In *Brockman* the action was brought to recover death benefits under an ordinary life policy which excepted suicide as a risk. Since double indemnity for death resulting from violent, external and accidental means was not in issue, *Brockman* is not in point and further discussion of it is unnecessary.

In *Harless* the action was brought on a life policy with a double indemnity clause attached, providing for the payment of an additional amount if death of the insured resulted from bodily injury effected through external, violent and accidental means. The company's defense was death by suicide within the two-year exclusion clause of the policy. At the conclusion of all the evidence, the trial court sustained the company's motion to strike out plaintiff's evidence and held as a matter of law that the company had successfully carried the burden of proof by clear and satisfactory evidence that suicide was the cause of death. In affirming the trial court, we did not discuss the question as to the burden of proof (or persuasion) under the double indemnity provisions of the policy, although this question was raised in the defendant's brief, because it was unnecessary to the decision. Once the insurer had borne its burden of proving suicide by clear and satisfactory evidence as to the principal action under the life policy, the double indemnity claim necessarily failed.

The majority has established a rule, contrary to the great weight of authority, that the same burden of proof rule respecting suicide adopted in actions on life policies is applicable in actions on accident insurance policies or the double indemnity provisions of life policies, without recognizing that the risks assumed are quite different. There is a clear and rational distinction between actions on life insurance contracts providing for the payment of stipulated benefits in the event of death, but excepting death by suicide, and contracts like the present one which insure against death by violent, external and accidental means. As to the former contracts, since death is the insured event, the plaintiff-beneficiary need only prove death while the defendant-insurer has from the inception the burden of proof as to suicide which is there raised as an affirmative defense; whereas under the latter contracts, since the risk insured against is not death alone but accidental death, it is incumbent upon the plaintiff-beneficiary to prove that death was accidental. See *Hinds* v. *John Hancock Mutual Life Insurance Co.*, 155 Me. 349, 155 A. 2d 721, 85 A.L.R. 2d 703, 710 (1959); *Beaver* v. *Fidelity Life Association*, 313 F. 2d 111 (10 Cir. 1963); *Headlee* v. *New York Life Ins. Co.*, 69 S. D. 499, 12 N. W. 2d 313, 315 (1943); *Ryan* v. *Metropolitan Life Insurance Co.*, 206 Minn. 562, 289 N. W. 557 (1939); *Watkins* v. *Prudential Ins., Co.*, 315 Pa. 497, 173 A. 644, 649, 95 A.L.R. 869, 875 (1934); *Jefferson Standard Life Insurance Co.* v. *Clemmer*, 79 F. 2d 724, 103 A.L.R. 171 (4 Cir. 1935).

Traditionally, the burden of proof is on the plaintiff who alleges in his pleadings the existence of a certain fact or the truth of a particular proposition. Moreover, this burden remains during the entire trial on the party who assumes it in the first instance and never shifts to the adverse party. It is only the duty of going forward with the evidence that may shift from one party to another during the course of the trial. *Hall* v. *Hall*, 181 Va. 67, 80, 23 S. E. 2d 810, 815, 816 (1943); *Brooks* v. *Worthington*, 206 Va. 352, 359, 143 S. E. 2d 841, 847 (1965); 29 Am. Jur. 2d, Evidence, §§ 123, 124, pp. 154-156.

The plaintiff-beneficiary here was aided by the presumption against suicide and in favor of accidental death, but I cannot agree that the presumption had the weight and effect of shifting to the defendant-insurer the burden of proving suicide. The majority in effect has said that the party having the benefit of the presumption may rely upon it alone and need not produce further proof when contravening proof is introduced by the opposing party. Such holding runs counter to the established principle that the burden of proof, as distinguished from the burden of going forward with the evidence, never shifts from the proponent to the party against whom the presumption operates. The holding is also contrary to the great weight of authority that the presumption against suicide does not remove the burden from the plaintiff of proving death by accidental means in actions on accidental death policies or for double indemnity benefits under life policies. *O'Brien* v. *Equitable Life Assur. Soc'y of United States*, 212 F. 2d 383 (8 Cir. 1954); *Ward* v. *Penn. Mut. Life Ins. Co.*, 352 S.W. 2d 413 (Mo. Ct. App. 1961); *Combined Am. Ins. Co.* v. *Blanton*, 163 Tex. 225, 353 S.W. 2d 847 (1962); *Watkins* v. *Prudential Insurance Company of America, supra; Tower* v. *Equitable Life Assur. Soc. of U. S.*, 125 W. Va. 563, 26 S.E. 2d 512 (1943); 21 Appleman, Insurance Law and Practice, § 12157, pp. 113-115, and the numerous cases there cited.

The provision in the policy excepting suicide, sane or insane, is not an exception under the general risk covered, but a definite limitation. Death by suicide is clearly not accidental. Hence suicide is not an affirmative defense under an accident policy. *Zuckerman* v. *Underwriters at Lloyd's London*, 42 Cal. 2d 460, 267 P. 2d 777, 785 (1954); *Hrybar* v. *Metropolitan Life Ins. Co.*, 140 Ohio St. 437, 24 Ohio Ops. 437, 45 N.E.2d 114 (1942); Annot., 142 A.L.R. 742, 743 (1943).

The majority justifies its holding that the burden on the defendant should be the same in each instance by stating that if we invest the

beneficiary of a life insurance policy with a firm presumption against suicide, we should accord the same presumption to the beneficiary of an accidental death policy.

I do not agree with this reasoning. In an action on a life policy the plaintiff-beneficiary only has to prove death to make out her case because suicide is an excepted risk under such a policy and is an affirmative defense which the insurer is required to prove from the very outset. Thus the burden of persuasion is not on the insurer because of the presumption. It would be strange indeed to speak of a presumption as allocating the burden of proof to a party upon whom it clearly rests before the presumption arose. Presumptions operate against the party not having the burden of persuasion on the particular issue. It has been aptly stated that to hold that a presumption operates against a party already having the burden of persuasion is "like throwing a handkerchief on a man already covered with a blanket."

I agree with the majority that "The courts and commentators are in agreement that when [unexplained] death by external and violent means is proven, a presumption arises * * *." In this situation the presumption against suicide operates in favor of the plaintiff-beneficiary who has the burden of proving accidental death within the terms of the insuring agreement. Suicide is not an affirmative defense under an accident policy and the plaintiff-beneficiary makes out a prima facie case with the aid of the presumption. The majority recognizes that the burden is on a plaintiff-beneficiary to prove accidental death in an action on an accident policy; but the opinion disregards this established principle and the presumption is given greater force and effect than can be justified under the provisions of such a policy.

The majority further says that if the same burden of proof rule applicable to actions on life policies is not applied to accident policies or the double indemnity provisions of life policies, an anomalous situation would be created in actions to recover under life policies with double indemnity benefits. The opinion states that it would be difficult for a judge to instruct the jury, but "Assuming that such instruction could be framed, it is unreasonable to expect a jury of laymen to draw the fine distinctions that would be demanded of them."

I disagree. In such actions the plaintiff may rely upon accidental death by external violence as a basis for recovery of double the amount of the face of the policy, and the defendant may rely on suicide as a defense to the entire claim. In such event the burden of persuasion rests upon the plaintiff to bring himself within the double indemnity provisions, and upon the defendant to bring itself within the protec-

tion of the suicide clause. If the jury are satisfied that the death was accidental, their verdict should be for the plaintiff for the full amount. If, on the contrary, they are satisfied from the evidence that the cause of death was suicide, they should find for the defendant. But, if the minds of the jury are in a state of equipoise and they are unable to determine from the evidence whether the death was accidental or suicidal, they should find not for the full amount but only for the face amount of the policy; in such event the plaintiff will have failed to meet the burden of persuasion as to accident, and the defendant will have failed to meet the burden of persuasion as to suicide.

I do not think that by so instructing the jury they would be confused. The principles stated are not conflicting. Juries are quite often called upon to draw "fine" distinctions because of the principles of law involved in a case. For instance, in a tort action where there are two defendants a jury may be told that in order to find a verdict against one the plaintiff must prove gross negligence, while as to the other only simple negligence. To carry it a step further, a jury may have to decide whether the negligence of one defendent was a proximate or remote cause of the accident. Other illustrations could be multiplied, but they would serve no useful purpose. Such situations require juries to make fine distinctions, but we have not abandoned the principles because they might confuse the jury.

I agree with the majority that whether the insured's death was accidental or suicidal was a jury question, but I would reverse the judgment and remand the case to the court below for a new trial solely because the jury was misdirected.

EGGLESTON, C.J., and GORDON, J., concur in this dissent.

## Rules of Court

## Order Amending

VIRGINIA:

In the Supreme Court of Appeals held at the Supreme Court of Appeals Building in the City of Richmond on Wednesday the 16th day of October, 1968.

It is ordered that the Rules adopted and promulgated by this Court on the 13th day of October, 1949, to become effective on the 1st day of February, 1950, be and they are hereby amended, effective the 2nd day of January, 1969.

Amend § 1 of Rule 5:3 to read as follows:

§ 1. *Form and Contents of Petition.* Except as provided in this Rule, and except when the appeal is a matter of right, the form, contents and length of the petition for appeal shall conform in all respects to the requirements for the appellant's opening brief, but need not be printed. The petition for appeal may be adopted as and in lieu of the opening brief if the election to do so is stated in the manner required by § 2 of this Rule. If so adopted it shall be printed and distributed as the record is printed and distributed under Rule 5:12, § 4, except that it shall be printed under separate cover.

Amend § 2 of Rule 5:3 by adding a new subsection to be designated Subsection (d) as follows:

(d) Whether or not supersedeas is requested.

Amend § 5 of Rule 5:3 to read as follows:

§ 5. *Brief in Opposition.* Within fourteen days from the date on which the copy of the petition is mailed or delivered to opposing counsel, he may file a written brief in opposition to granting the appeal but will not be heard orally. Within the same time he shall mail or deliver a copy to counsel for petitioner. In a criminal case, the Commonwealth's Attorney shall file a brief in opposition within fourteen days from the date a copy of the petition is mailed or delivered to him. The brief may be filed with the clerk of this Court or presented to the Justice to whom the petition was presented. Except by special permission of a Justice, the brief shall

not exceed twenty-five pages, excluding appendices setting forth exhibits or other documents. If the brief exceeds ten pages, it shall contain a subject index and table of cases alphabetically arranged.

When it clearly appears that an appeal ought to be allowed without further delay, an appeal may be allowed prior to the filing of the brief in opposition.

Amend Rule 5:10 to read as follows:

### Rule 5:10. Oral Argument.

Except by special permission of the Court, not more than forty minutes will be allowed each side for oral argument. The time may be apportioned between counsel on the same side at their discretion, except that only one counsel may present the opening argument for the appellant and he shall make a fair opening of the case.

In no case is it necessary or proper to read the record to the Court, but counsel may refer thereto and state what they consider proved. It is recommended that counsel select and cite only the most pertinent authorities.

Any party may waive his privilege of oral argument.

Amend Rule 5:12 by adding a new section to be designated Section 3A as follows:

§ 3A. *Length of Briefs.* Except by special permission of a Justice, neither the opening brief of the appellant nor the brief of the appellee shall exceed fifty pages, nor shall the reply brief (if any) of the appellant exceed fifteen pages, excluding appendices setting forth exhibits or other documents.

In pursuance of the provisions of the Code of 1950, § 8-86.1, it is ordered that the amendments to the Rules as adopted shall be certified to every court of record in this State.

A Copy,
Teste:
H. G. TURNER, Clerk