Statement.

## Richmond.

## GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE COR-PORATION, LIMITED V. MURRAY.

November 16, 1916.

Absent, Sims, J.*

1. ACCIDENT—*Proof Required—Circumstantial Evidence—Demurrer to Evidence.*—While the proof of an accident may be circumstantial, the circumstances proved must point directly to the main fact in issue and not be such as to lead merely into a labyrinth of surmises and conjectures. Even upon a demurrer to evidence the finding cannot be based upon conjecture, guess or random judgment, but must be founded upon facts shown in evidence.

2. NEGLIGENCE—*Burden of Proof—One of Two Causes of Accident.*—In an action to recover damages for a negligent injury, the burden of showing negligence by a preponderance of the evidence is upon the plaintiff, and if the injury might have resulted from one of two causes for only one of which the defendant was responsible there can be no recovery; neither can the plaintiff recover if it is just as probable that the damage was caused by the one as by the other.

3. ACCIDENT INSURANCE—*Accidental Death—Burden of Proof—Presumption—Case at Bar.*—In order to recover on an accident policy, the burden is on the plaintiff to bring himself within the provisions of the contract of insurance by proving an accidental injury to the assured. There is no presumption to aid in this proof, as death is presumed to be the result of natural dissolution rather than of accidental injury. In the case at bar, the accidental death of the assured is not established by the evidence introduced in the cause.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action on an accident insurance policy. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

---

* Submitted before Judge Sims took his seat.

The opinion states the case.

*R. Randolph Hicks,* for the plaintiff in error.

*E. R. F. Wells,* for the defendant in error.

CARDWELL, P., delivered the opinion of the court.

This action was brought by Jenny W. Murray against the General Accident, Fire and Life Assurance Corporation, Limited, to recover the amount claimed to be due on a policy of accident insurance which had been issued to plaintiff's husband, William L. Murray, by the defendant.

The defendant pleaded the general issue—non-assumpsit—to which the plaintiff replied generally; and also filed two special pleas, the substance of which was that the policy sued on was issued to the insured upon the faith and belief that certain statements made by him in a written application therefor and intended as warranties were true, but were by the assured knowingly falsely made, and that but for these false statements in his application for the policy, which were material, the policy sued on would not have been issued; upon which special pleas the plaintiff joined issue.

Evidence was introduced by both parties in support of their respective contentions, and thereupon the defendant demurred to the evidence, in which demurrer the plaintiff joined, and the court overruled the demurrer and entered final judgment in favor of the plaintiff against the defendant for the amount of the policy of insurance sued on, $4,500, with costs, to which judgment this writ of error was allowed.

On March 8, 1914, the assured, William L. Murray, a resident of Norfolk city, Va., was taken sick with a very mild case of smallpox, the case being so mild that the at-

tending physician experienced considerable difficulty in diagnosing it as smallpox, and it was not until March 14, 1914, that the case was reported as smallpox to the health authorities of the city of Norfolk, on which day the patient was removed from his residence to Craney island, the detention station for smallpox cases, established by and under the authority of the health board of the city of Norfolk; and according to the attending physician, Dr. Sleet, at Craney island, the assured's case of smallpox was so mild that he was not confined to his bed over two or three days, but was up and walking around his room, which testimony is borne out by one Henry F. Barr, another smallpox patient at Craney island, who occupied the same room with the assured. On March 25 or 26, 1914, the Wednesday or Thursday before the assured left Craney island, he having practically recovered from smallpox and had been told by Dr. Sleet that he was going to clear him up and send him home shortly, he put on a pair of new high tan shoes, which he had owned for ten days or two weeks and had worn some before going to Craney island, but had not worn before at the island, and took a walk around the island. Coming back to his room about four or five o'clock that night, he said to his companion, Barr, that "his foot was hurting him by smarting." Nothing further was said about it that night, but the next morning the assured had a high fever, lounged around the room and did not eat any breakfast, and on March 28 or 29 a case of erysipelas developed in his leg. On the night of the 30th of March, he was carried to his home, where he died from the effects of the erysipelas about two weeks later.

It was the contention of the plaintiff at the trial that the death of the assured was the result of a bodily injury caused through accidental means, namely, the rubbing of his foot by his shoe; that through an abrasion of the skin caused in this way, the erysipelas germ entered his body,

causing the erysipelas, which led to his death; and that death brought about in this way was covered by the policy of insurance on which this action is based.

The defendant, on the other hand, contended that the evidence was not sufficient to show that the assured came to his death by reason of bodily injuries effected through accidental means, and, further, that the policy of insurance was rendered void by reason of an alleged false and fraudulent answer made by the assured in his application for the policy.

The question whether or not the assured's death was the result of "bodily injuries effected directly and independently of all other causes through accidental means," involves two component inquiries, the first of which is, was the erysipelas of which the assured died caused by an accident, namely, the rubbing of his foot by his shoe? In other words, the assured having died, as is not controverted, of erysipelas, how was this erysipelas, the beginning of his death, caused?

We have stated in a general way the facts which the evidence proved, or tended to prove, as to assured's stay at Craney island, the detention station for smallpox cases, his condition at the time he was sent to his home, where he died about two weeks later, etc., and we will now review more in detail the evidence relied on by the plaintiff to sustain her contention that the erysipelas, of which the assured died, was caused by the rubbing of his foot by his shoe. This evidence is given by the witness, Barr, who was, as stated, occupying the same room with the assured at that time, and the plaintiff testifying on her own behalf.

The substance of the testimony given by Barr as to what he saw on the evening it is claimed that assured's foot was rubbed by his shoe, is: "He was walking around the room, and healing rapidly, and was wearing slippers like

anyone else, and one evening he put on a high pair of tan shoes. He walked around on the island and came back about four or five o'clock, to the best of my recollection, and came back and sat around. They generally retired about seven or eight o'clock, sometimes later, and before retiring he set on the edge of the bed, and he says to me * * * He said that his foot was hurting him by smarting." After stating that he the next night examined assured's foot, witness Barr says: "He had a small rubbed place, just a fraction above his ankle bone, a reddish place. I did not want to discourage him, but it looked to me like erysipelas, but I did not know, but he showed it to the doctor when the doctor came again. The doctor came over in the afternoon and taken his temperature, and it registered 102, and he examined him. He told him he didn't see anything the matter with his lungs or anything, but thought he had * * *" (Here witness was stopped.)

The witness was then asked as to when Dr. Sleet first saw assured's leg after it became infected, and if he remembered what Dr. Sleet did, to which witness replied: "He looked at it and said it was caused by the infection of the shoe." Dr. Sleet was questioned with regard to this, and while he did not deny it, said that he did not remember, but did state positively that he saw "the point of infection," and that it was "between his ankle and heel," not above the ankle bone. The witness Barr had stated that the small rubbed place he saw was "just a fraction above his (assured's) ankle bone, a reddish place."

Plaintiff testified that when the assured went to Craney island he carried with him a pair of tan shoes which he had owned about two weeks or ten days before he left, and that when he came back from Craney island his temperature was 104; that his right limb was swollen up to his knee and the next morning she found a place on the side of his foot the size of the end of her finger which looked

"rubbed and was crinkled and rough like one's finger would be when in water." Her testimony on this point is as follows:

"Q. Did you have occasion to examine Mr. Murray's foot and leg after he came back from Craney island? A. Not that night. I did the following morning after the doctor came and was dressing it, and the nurse and I found a place on the side of his foot.

"Q. What size place? A. It was the size of the end of the finger and looked rubbed, and was crinkled and rough like your finger would be when in water.

"Q. Which foot? A. The right foot between the heel and the ankle bone on the inside of the foot.

"Q. What kind of shoes did Mr. Murray take with him to Craney island? A. A pair of new tan shoes, that he had about two weeks, the first pair that he had had for several years.

"Q. Had he worn these much before he went to Craney island? A. No, they were new; just two weeks or ten days before he left."

It is to be observed that the witness, Barr, says he saw a place *above* the ankle of the assured which *looked* like it had been rubbed, which was twenty-four hours after the assured's walk in the high shoes, but neither he nor the plaintiff, Mrs. Murray, undertake to say that it was rubbed by the shoe, or how rubbed. Dr. Payne, the attending physician after, as well as before, the return of the assured from Craney island to his home, and who was put on the witness stand by the plaintiff, did not see this rubbed place located by the witness, Barr, above the ankle joint, but by the plaintiff, Mrs. Murray, between the ankle joint and the heel, nor did any other witness see it. But whether the rubbed place—"a reddish place"—which Barr saw and located as "just a fraction above the ankle bone," was the same "rubbed, crinkled and rough looking place like one's

finger when in water" which Mrs. Murray discovered and says she pointed out to the doctor, and which, according to their recollection was between the heel and the ankle bone, or whether there were two separate and distinct abrasions or reddish places on the assured's ankle, is we think wholly immaterial as the vital question presented at the threshold of the case for determination is whether or not the evidence is sufficient to have warranted a jury in finding that this abrasion or reddish, crinkled looking place was caused by the rubbing of assured's shoe, and through which rubbed, etc., place the erysipelas germ entered his body, thereby causing his death. Barr only says that it *looked* like it had been rubbed, and his statement that it looked to him like erysipelas and that he called Dr. Sleet's attention to it, and that the latter said it was "caused by the infection of the shoe," is wholly without probative force, first, because the statement that it looked to the witness like erysipelas is an unwarranted statement from one not shown to be competent to express an opinion on such a subject; and, second, because there is no evidence whatever in the case to prove or tending to prove that the assured ever had a tight shoe, or that a shoe, tight or otherwise, rubbed his foot. The assured when he complained of his foot hurting by smarting said nothing about his shoe having rubbed his foot. So that if Dr. Sleet ever said that the place pointed out to him by Barr was "caused by the infection of the shoe," it was but an expression of an opinion having no foundation other than conjecture and speculation to support it.

The medical or expert testimony in the case, which is practically not controverted, shows that erysipelas is a disease caused by the entrance of a germ through an abrasion or some break of the skin; that it is necessary for there to be an abrasion or break in the skin in order for this germ to enter, and that the disease is not caused by

any internal disorders.   But it is also in proof that this particular germ frequently enters the body as a sequela of smallpox which consists of numerous small pustules or sores on the body which penetrate the skin.   Dr. Sleet, a practicing physician for thirteen years, and who, as city physician of the city of Norfolk, had an experience in two epidemics of smallpox and had treated during this experience some 3,000 cases, testifies in this case that he treated 702 cases of smallpox during the year that the assured, Murray, died, and among this number there were thirty-three cases of erysipelas as a result of the smallpox; and this was not considered by Dr. Sleet a large percentage. He further states that the year before two or three out of seventy-five cases of smallpox developed erysipelas.   Dr. Sleet was asked the following questions and gave the following answers thereto:

"Q. Now, doctor, until the (smallpox) sores are entirely healed, there are abrasions in the skin, are there not?   A. Yes, sir.

"Q. Through which erysipelas may enter?   A. Yes, sir.

"Q. You did not observe any particular point of infection when you first examined Mr. Murray, did you?   A. I saw the point of infection, yes, sir.

"Q. Where was it?   A. Between his ankle and heel.

"Q. (By the court) You mean by that the germ had gotten in there?   A. Between the ankle and the heel; yes, sir.

"Q. When you found—after you discovered Mr. Murray was suffering from erysipelas, had the body been cleared of the smallpox?   A. It had not.

"Q. At that time the sores were still there.   A. Yes, sir.

"Q. And there were weak places in the skin?   A. The scabs had not come off in a good many places when he was taken sick.

"Q. At the time that he was taken sick, there were open places that would be subject to infection from smallpox? A. I presume so."

Dr. Schenck, the health commissioner of the city of Norfolk, who had charge of the smallpox cases occurring at the time that the assured, Murray, had it, testified as follows:

Q. "What are amongst the *sequelae* of smallpox? A. Abscesses, carbuncles, different kinds of infection, erysipelas and inflammation. The various types of which are recognized by all authorities as being quite apt to follow smallpox. Smallpox is an aseptic disease and exposed to all aseptic."

The witness further testified on cross-examined that according to all the authorities it was necessary that there should be an abrasion, an opening of some kind in the skin, for erysipelas to enter; that even if the germs were to enter through one of the smallpox pustules, there would have to be some sort of rubbing of that part, any opening in the skin, or any part of the cutaneous tissue would govern.

"Q. If a scab had formed over the pustule it would be necessary for the scab to be rubbed off? A. My opinion, I would not think it would enter the ordinary scab over a sore. It would have the scab cover against the infection.

"Q. (By the court) You say the germ could be protected by the scab? A. It could get under it. I don't say the scab entirely seals it.

"Q. There would be an opening in the scab for it to get in? A. There must be; yes, sir."

Upon further cross-examination the witness stated that to some extent the scab on a smallpox pustule acted as a protection; that there would be nothing unusual for a germ to enter a rubbed place on the ankle caused by the rubbing of a shoe, and that he had known of it in his own experience.

"Q. (By counsel for defendant) What you meant by saying that the scab was not germ proof? A. I don't consider a scab germ proof."

A book written by Dr. Osler, a recognized authority, was introduced by plaintiff, and in it, speaking of smallpox cases, this language appears: "Erysipelas is not common. When it does occur it comes on in the third week of the disease. Considering the number of streptococci which are present in the lesions, and the opportunity of infection, it is surprising that this infection is not more frequent." That learned author also says: "Convalescence should not be considered established until the skin is perfectly smooth and clean, and free from any trace of scabs," which statement coincides with the view testified to by Dr. Sleet in this case, who said: "I don't consider smallpox clean until clear of sores."

Writings by Dr. John MacCombe, of Southeastern Smallpox Hospital, were read from as evidence in the case, and that learned authority says: "Erysipelas is not infrequent; it comes on during the scabbing stage or later, is apt to spread, and is accompanied by fever. When extensive, the constitutional symptoms may be severe, and the patient, if weakened by a severe attack of smallpox may succumb."

Other recognized medical authorities were read from in the introduction of the evidence in the case, all of which bear out the theory that amongst the *sequelae* of smallpox is erysipelas, which is not infrequent, and the patient is not free from danger "until the skin of the patient is perfectly smooth and clean, and free from any trace of scabs," as Dr. Osler expresses it, or as Dr. Sleet states, "clear of sores."

In this case when Murray, the assured, was found to be suffering from erysipelas, his body had not been cleared of the smallpox; there were sores still there, as well as weak places in the skin, and there were open places that

were subject to infection from the smallpox. So that the crucial question of fact presented in the case was whether the infection of erysipelas, which resulted in the death of the assured, entered his body through the sores incident to smallpox or was caused by an accidental rubbing of his foot by his shoe. In other words, did the fatal erysipelas germ enter the body of the assured at the point which it is claimed was accidentally rubbed by his shoe, or through some abrasion or sore incident to the smallpox? This question is, of course, to be considered and answered in the light of the familiar and oft-repeated rule applicable to a demurrer to the evidence.

The medical evidence given in the case is, as we have seen, uncontroverted, and shows that erysipelas is a disease caused by the entrance of an infection through some break or abrasion of the skin, and further that this particular germ frequently enters the body as a *sequelae* of smallpox, which consists of small pustules or sores on the body penetrating the skin and that these sores when "cleaned off" leave a "reddish" spot in the skin.

The learned counsel for the plaintiff earnestly and forcefully argues—citing numerous authorities to support the contention—that the evidence was sufficient to have warranted the jury in finding that the infection causing the erysipelas in the assuered's leg, resulting in his death, entered through a rubbing or an abrasion caused by his shoe, and therefore this court must so find. Without doubt the proof of an accident may be circumstantial, but the circumstances proved must point directly to the main fact in issue and not be such as to lead merely into a labyrinth of surmises and conjectures. The finding of the jury or of the court cannot be based upon conjecture, guess or random judgment, rather than upon reliable or established facts shown in the evidence.

It would serve no good purpose to undertake to review the numerous authorities cited as supporting plaintiff's contention in this case. The case is analogous to that class of cases frequently considered and ruled upon by this court, in which damages were sought to be recovered for injuries resulting from an accident alleged to have been caused by the negligence of the defendant, and wherein it has been uniformly held that the burden of showing negligence by a preponderance of the evidence was on the plaintiff, and if the injury might have resulted from one of two causes, for one of which the plaintiff was responsible, but not for the other, the plaintiff could not recover; neither could he recover if it was just as probable that the damage was caused by the one as by the other. *N. & W. Ry. Co.* v. *Poole's Admr.*, 100 Va. 148, 40 S. E. 627; *C. & O. Ry. Co.* v. *Heath*, 103 Va. 64, 48 S. E. 508, and cases cited.

It is true that contracts of insurance are to be construed most strongly against the insurer and in favor of the assured, but, both upon reason and authority, the right to recover upon the policy sued on must be established by a preponderance of the evidence adduced in the case, and not be based merely upon conjecture, guess or random judgment, that is, upon mere supposition without a single known fact.

In order for the plaintiff to recover in this action, the burden is upon her to bring herself within the provisions of the contract of insurance by proving an accidental injury to the assured, and there is no presumption to aid her in this proof, since the well-established rule of law, according to all the authorities, is, that when death occurs it is to be presumed to be the result of natural dissolution rather than of accidental injury.

The proof of the alleged accident in the case of *Carnes* v. *Iowa Travelling Men's Asso.*, 106 Iowa 281, 76 N. W. 683, 68 Am. St. Rep. 306, was quite similar in character

and quantity to the proof in the case at bar, and in the court's opinion in that case it is said: "Now, it is impossible to say, from the evidence, whether Carnes took more morphine tablets than he intended to take, or whether he took just what he did intend, and misjudged their effects. Death might have been occasioned in either way, and one is as likely as the other. Under such circumstances, can it be left to the jury to guess which? The burden of proof was upon the plaintiff to show that death resulted from an accidental cause, and, the evidence leaving this unestablished, she failed to make out a case. It is said, however, that death will be presumed to have resulted from accident, and that the burden of proof is upon the defendant to show the contrary. But an examination of the cases does not sustain this contention. They go no further than to hold that, where the insured has introduced evidence tending to show an injury to be the result of an accident, the burden of proof is on the insurer to establish a defense that the insured was within some exception to the policy  *   *   *  The plaintiff wholly failed to prove the cause to have been accidental, and this will not be presumed. It was necessary to do this in order to bring the case within the terms of the policy." See, also, *Kling* v. *Masonic Frat. Asso.*, 104 La. 763, 29 So. 333.

Plaintiff in this case necessarily has to rest her right to a recovery upon the evidence given by herself and her witness, Barr, who occupied with the assured the same room at the Craney island detention station. An analysis of Barr's testimony shows that while the assured, Murray, put on the tan shoes one afternoon and walked out, returning about four or five o'clock, he made no complaint until about bed time, and then only said his foot hurt him by smarting, but Barr does not pretend to say why assured's foot was smarting nor offer any explanation of this remark by the assured. Nor did he examine assured's foot

at that time, nor until the evening of the day following, and says that he then saw a "small reddish place" above the ankle bone, and concluded that it was rubbed, but does not undertake to say how it was rubbed, and that it was in fact rubbed was necessarily a guess or surmise on his part. When Barr noticed this reddish place above the ankle bone, he showed it to Dr. Sleet, but the latter failed to observe that it was a rubbed place, and at the time that Dr. Payne examined assured, he failed to observe the "crinkled place," testified to by the plaintiff as being between the ankle bone and the heel, so that neither of these physicians who were attending and treating the assured, observed the *phenomena* which were subsequently testified to by plaintiff and Barr. If, therefore, the "crinkly place" observed by plaintiff five days after the assured's infection of erysipelas was a rubbed place, then it was a rubbed place not observed by Barr on the day after the rub is supposed to have taken place, because the only place, a "reddish place," observed by Barr was just above the ankle bone. It is undisputed that the infection of erysipelas did not enter at the point just above the ankle bone noticed by Barr, and which he concluded had been rubbed, but at another place between the ankle bone and the heel; so that the case, in the light of this evidence, even if assured's shoe should have rubbed his foot (which the evidence fails to disclose) shows the erysipelas entered at some other point and could not be considered as having been the direct or even the indirect result of the accidental rubbing of assured's foot by his shoe.

Of the cases cited in support of plaintiff's contention that the evidence in the case is sufficient to have warranted the jury in finding that the rubbing of the foot by his shoe was the cause, independent of all other causes, of assured's death, the case of *Caldwell* v. *Iowa, State, &c. Asso.* 156 Iowa 327, 136 N. W. 678, is, perhaps, more in point here,

in which case the insured received a slight injury on his cheek, causing a slight abrasion of the skin, which resulted in erysipelas, from whch disease he died, and the defense made to the action to recover the amount of insurance stipulated for in the policy sued on was, that the death of the assured was the result of bodily infirmity and disease, not the result of violent and external injury, and the court held as follows: "Where death results from erysipelas, which follows as a natural, though not as a necessary, consequence of an accidental wound upon the cheek, it may be deemed the proximate result of the wound, and not of the disease, within the requirement of accident insurance policy that death must result solely by accidental means.

"In an action on an accident insurance policy, evidence of the existence of a slight wound upon the cheek was sufficient to support a finding that the wound was violent and external; and that the burden was on the plaintiff to show, not only the death of the insured, but also that it was caused by violent, accidental and external means."

The case here is very different in that there is no evidence, as we view it, to support the theory of the plaintiff, that assured, Murray's, foot had been rubbed by a tight shoe, causing an abrasion of the skin through which the erysipelas germ entered and caused his death. As we have seen, no one testifies in the case that assured ever had a tight shoe, or that a shoe, tight or otherwise, rubbed his foot. Instead of showing that the shoe it is claimed rubbed his foot was the "new high tight shoe" graphically described in the argument of counsel for plaintiff, it is testified by the plaintiff herself that the shoes in question had been owned by assured for two weeks prior to his going to the detention hospital on Craney island, and been worn some by him, and were taken by him to the island when he was sent there. Not only so, but the proof for plaintiff is that when the erysipelas germ entered assured's foot at a point

17

below the ankle bone, there were not only red places all over his body, due to smallpox, but pustules or sores of smallpox were still upon his body, through which, it is shown, without contradiction, that the fatal erysipelas germ might have entered.

Juries, as well as courts of law, are called upon to adjudge cases on facts and reasonable inferences from those facts, not upon surmise and conjecture as to what are the facts in a particular case. As we view the evidence in this case, upon the defendant's demurrer thereto, it is wholly insufficient to establish with reasonable certainty the fact, essential to plaintiff's right to recover, namely, that the assured sustained an injury by the rubbing of his foot by a shoe through which the germ of erysipelas entered and caused his death; and, therefore, such a finding by the jury would necessarily have been based solely upon conjecture, guess, or random judgment, rather than upon any reliable or established facts appearing in the case. This view of the case renders it unnecessary to consider other assignments of error.

It follows that we are of opinion that the trial court erred in overruling defendant's demurrer to the evidence, and its judgment will be reversed and judgment entered by this court for the defendant.

*Reversed.*