ESTATE OF Abdullahi MOHAMED Falhad Mohamud, Administratrix Plaintiff,

v.

MONUMENTAL LIFE INSURANCE COMPANY Defendant.

No. CIV. A. 00–110–A.

United States District Court, E.D. Virginia, Alexandria Division.

March 26, 2001.

Judy A. Dugger, Fairfax, VA, for Plaintiff.

Robert Barnes Delano, Jr., Richmond, VA, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

LEE, District Judge.

THIS MATTER is before the Court for disposition on the merits of Plaintiff's breach of contract claim against the Defendant insurance company. Two insurance policies are at issue in this matter: (1) a group mortgage life insurance policy, and (2) a mortgage accidental death insurance policy. This matter involves Plaintiff's persistent attempts to recover under these two policies by showing proof of death that her husband, the insured, was gunned down in a coffee shop in Mogadishu, Somalia. The policies at issue require the production of a death certificate, among other things, as a condition precedent to recovery. Plaintiff provided the insurance company with a Somali death certificate and numerous requested items in support of her claim. However, the insurance company would not accept the Somali death certificate produced by Plaintiff as proof of death because the company claims that it had no means to verify the authenticity of the certificate. Two issues are presented to the Court to determine whether Plaintiff can recover under the insurance policies. First, whether a preponderance of the evidence shows that Plaintiff has complied with the requirements of the insurance contracts by submitting a death certificate and other proof of death in support of her claims to recover benefits under the policies. Second, whether a preponderance of the evidence shows that her husband's death was accidental and not a

product of war as defined by, and which prohibits recovery under, the accidental death insurance policy. After weighing the evidence and considering the demeanor and credibility of the witnesses, this Court holds that the preponderance of the evidence shows that the insurance company has breached its contractual obligations to pay Plaintiff the proceeds under the insurance policies. In accordance with its ruling, the Court renders the following findings of facts and conclusions of law.

## FINDING OF FACTS AND CONCLUSIONS OF LAW

In connection with the purchase of their home, on July 14, 1989, Plaintiff Falhad Mohamud and her husband Abdullahi Mohamed, ("the Insured") purchased two insurance policies from the Minnesota Mutual Life Insurance Company, which later became Defendant Monumental Life Insurance Company ("Monumental Life"). The two separate insurance policies that are at issue are the Group Mortgage Life Insurance Policy and the Group Mortgage Accidental Death Insurance Policy. Under the policies, if either insured died, the insurance company would pay the outstanding balance on the insured's mortgage loan.

On July 1, 1997, Mrs. Mohamud alleged that her husband, the Insured, was shot and killed while sitting in a coffee shop in Mogadishu, Somalia. Random acts of violence and disappearances occurred frequently in Somalia. At the time of the killing, Somalia did not have a national government, a legal system, or a functional judicial system. The political situation in Somalia was one of anarchy and was marked by inter-clan fighting and random banditry. Simply put, the country was in a state of civil unrest at the time of the Insured's death.

On or about November 26, 1997, Mrs. Mohamud filed a claim under the two insurance policies with Defendant Monumental Life. The parties agreed that the policies were in effect at the time of the Insured's death. On July 1, 1997, the outstanding balance on the mortgage loan was $86,637.63, of which $84,323.71 was for unpaid principal and $2,313.92 was for unpaid interest. Mrs. Mohamud made repeated demands on Monumental Life to pay the proceeds under the insurance policies. Under the policies, Mrs. Mohamud must present proof of death to Monumental Life before she can recover its benefits. (Def.Ex. 5, 6.) Specifically, Mrs. Mohamud must furnish the following to show proof of death: (a) a certified death certificate, (b) a statement by an officer of the mortgage lender that identifies the amount of the borrower's indebtedness to the lender, and (c) any other information deemed necessary to pay the claim. (Def. Ex. 5 at 8; Def. Ex. 6 at 9.)

In an attempt to comply with the provisions for recovery under the insurance policies, Mrs. Mohamud provided Monumental Life with several documents, including a Somali death certificate issued by the High Islamic Court of the Banadir Region of Somalia, a certificate from physician Dr. Osman Mohamud Mohamed Dufle from Mount Sinai Clinic in Somalia stating that the Insured died on July 1, 1997 due to gunshot wounds to his chest, and a cause and declaration of death from the High Islamic Court of Banadir Region stating that the Insured was dead as a result of a gunshot wound to the chest (collectively "Somali documents"). Mrs. Mohamud also provided Monumental Life with other materials it requested, including phone bills to Somalia with relatives' phone numbers on them, a statement by the mortgage lender stating the amount of the outstanding mortgage loan, newspaper articles ref-

erencing the Insured's death, the Insured's plane ticket information to Somalia, affidavits from friends of the Insured attesting to how he died, and affidavits from persons who attended the Insured's funeral. Despite the production of these documents, Monumental Life has refused to pay on the policies on the grounds that Mrs. Mohamud has produced no verifiable proof of death. Monumental Life reached this conclusion because it was unable to secure investigators who would agree to go to Somalia to verify the proof submitted by Mrs. Mohamud. Monumental Life never contacted the Insured's physician or family members in Somalia, nor did it travel to Somalia itself to verify the submitted proof.

 Mrs. Mohamud filed an Amended Complaint in this Court, and now seeks recovery as the certified Administratrix of the Insured's estate.[1] First, Mrs. Mohamud seeks a declaratory judgment declaring that judgment is entered in favor of the Insured's estate and awarding the proceeds referenced in the life insurance policies to the estate. Second, Mrs. Mohamud seeks recovery under a breach of contract theory for Monumental Life's failure to pay over the proceeds of the insurance benefits after she presented sufficient proof for recovery. Finally, Mrs. Mohamud seeks punitive damages for Monumental Life's bad faith, willful, and deliberate refusal to indemnify the Insured's estate. The Court dismissed Mrs. Mohamud's bad faith refusal to indemnify claim because no such cause of action exists under Virginia law. *See generally A & E Supply Co., Inc. v. Nationwide Mutual Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir. 1986). This Court also dismissed the punitive damages claim because Mrs. Mohamud cannot recover punitive damages under a breach of contract theory. *See Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514, 518 (1983). In addition, this Court dismissed the declaratory judgment claim because it simply asked this Court to declare that Monumental Life breached its contract. *See, e.g., Newton v. State Farm Fire & Cas. Co.*, 138 F.R.D. 76, 79 (E.D.Va.1991) (dismissing the declaratory judgment claim because the judgment would not serve any useful purpose in clarifying the contractual issues before the court). The central matter remaining before this Court is whether Monumental Life breached its contractual obligation under the policies to pay the outstanding balance on the Insured's mortgage loan upon a showing of proof of death.[2]

This Court takes a two-step approach to determine whether Monumental Life breached its obligation to pay under the policies. First, this Court looks to the proof of death found within the claims file (Def.Ex. 7) and weighs the testimony of the parties regarding the information presented to determine whether Mrs. Mohamud submitted sufficient preliminary proof of death. Second, this Court looks to all of the testimony submitted at trial and, after weighing the credibility of the testimony presented, determines whether the evidence shows that Mrs. Mohamud is enti-

---

1. Mrs. Mohamud has standing to sue as the Adminstratix of the Insured's estate because, under the policies, Monumental Life will apply the policies' benefit to reduce or pay off the Insured's outstanding balance on the mortgage loan with any excess being paid to the Insured's estate. (Def. Ex. 5 at 7; Def. Ex. 6 at 8.)

2. At the close of the case, Monumental Life properly moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52(c). *See* FED. R. CIV. P. 52(c). For the reasons stated herein, Monumental Life's motion is denied because Mrs. Mohamud submitted to Monumental Life sufficient preliminary proof of death to recover under the policies. *See infra* section A.

tled to recover under the policy. Under this analysis, the Court finds that Mrs. Mohamud did submit sufficient preliminary proof of death. The Court further finds that a preponderance of the evidence shows that Mrs. Mohamud is entitled to recovery under the policies because the Insured died by accidental means while covered under the policies.

## A. Preliminary Proof

■ Mrs. Mohamud did submit sufficient preliminary proof of death to recover under both policies. A court has the duty to make a preliminary determination of whether or not the materials submitted by the claimant are sufficient preliminary proof of death under the insurance policy. See Sec. Bank of Richmond v. Equitable Life Assurance Society of the United States, 112 Va. 462, 71 S.E. 647, 650 (1911). Accordingly, the Court must decipher the legal effect and sufficiency of the proof of death furnished in compliance with the requirements of that policy. See id., 71 S.E. at 649. As a condition precedent to the right to bring the suit, the claimant must produce sufficient preliminary proof of death such that, when introduced at trial, standing alone, and without further proof, it would support a verdict for the jury in favor of the claimant. See id. No precise standard exists to determine whether an insured has provided satisfactory proof of death. See id. at 650. Every case stands on its own facts. See id. Nonetheless, satisfactory proof entitles an insurer to demand that death be shown with reasonable definiteness and certainty. See id.

### 1. Group Mortgage Life Insurance Policy

Mrs. Mohamud has presented sufficient preliminary proof of death under the Group Mortgage Life Insurance Policy.

The mortgage life insurance policy provides that Monumental Life "will pay the life insurance benefit ... to the [b]eneficiary when [it] receive[s] proof that the Insured died while covered under the Policy." (Def. Ex. 5 at 4.) The policy requires that the claimant furnish (a) a certified death certificate, (b) a statement by an officer of the mortgage lender which identifies the amount of the borrower's indebtedness to the lender, and (c) any other information deemed necessary to pay the claim. (Def. Ex. 5 at 8; Def. Ex. 6 at 9.) Monumental Life repeatedly insisted that Mrs. Mohamud produce a certified death certificate. For example, Monumental Life stated in its policy, and in its initial request for Mrs. Mohamud to furnish proof of death, that the claimant needed to furnish a certified death certificate. In addition, in at least one letter to Mrs. Mohamud, Monumental Life stated, "We require an actual certified death certificate as *primary* proof of loss." (emphasis added) (Def. Ex. 7 at 207.)

In accordance with the terms of the policy, Mrs. Mohamud provided Monumental Life with the Insured's Somali certified death certificate. (Def. Ex. 7 at 7.) Mrs. Mohamud had the mortgage loan lender provide the insurance company with a statement which sets forth the principal balance of the outstanding loan. (Def. Ex. 7 at 25–37.) Mrs. Mohamud also filled out the claims forms provided by Monumental Life explaining that the Insured died as a result of a gunshot wound on July 1, 1997, in Mogadishu, Somalia. (Def. Ex. 7 at 12–16.)

■ Monumental Life found the produced death certificate to be inadequate. In light of its inadequacy, Monumental Life proceeded to request that Mrs. Mohamud provide several other forms of proof

to help them verify the Insured's death.[3] *See generally* 13 GEORGE J. COUCH, COUCH ON INSURANCE, Insurance ¶ 189:53 (3d ed.1999) (stating that the evidence submitted must indicate the truth of the facts stated therein; therefore, if insufficient proof is submitted, then the insurance company may request further information to satisfy its claim for recovery). Monumental Life requested: (1) a copy of the Insured's passport, (2) a copy of his visa to enter the United States, (3) documentation showing where he was buried, (4) a copy of the official investigative report filed as a result of the incident, (5) a copy of his birth certificate, (6) a copy of documentation from a hospital in Somalia which affirmed the Insured's cause of death, (7) any police investigative reports filed as a result of the loss, and (8) the name, address, and telephone number of the Insured's employer. (Def. Ex. 7 at 207, 213.) In compliance with Monumental Life's requests, Mrs. Mohamud provided Monumental Life with the Insured's passport, a copy of his green card showing him to be a resident alien, notice that Somalia did not issue official birth certificates, documentation from United States Representative Frank Wolf stating that as a resident alien the Insured would not need a visa to enter Somalia, notice that the Insured was buried free of charge in Sh. Ali Abdulle Cemetery, and at least three affidavits from persons stating that they attended the Insured's funeral in Mogadishu, Somalia. (Def. Ex. 7 at 240, 261, 272–77.)

The Court finds that this documentation and the veracity of the uncontested affiants is sufficient to demonstrate proof of loss under the policy.

■ To require Mrs. Mohamud to submit a death certificate in a form Monumental Life seeks as a prerequisite to recovery would impose an impossible condition to recovery under the contract. Contract requirements on notice of proof of death should be given a reasonable interpretation. *See* 13 COUCH ON INSURANCE ¶ 186:27. "[C]ourts will not presume that the parties intended that the insured do something impossible under the circumstances unless there is an express condition in the policy requiring a different interpretation." *Id.* Adequate proof of loss is that which accomplishes the basic purpose of enabling the insurer to adequately assess its rights and liabilities by advising the insurer of the nature and extent of loss and allowing the insurer to adequately focus its investigation and protect itself against fraud. *See id.* at § 180:41 (citing *O'Brien v. North River Ins. Co. of City of New York*, 212 F. 102 (4th Cir.1914)).

■ Mrs. Mohamud produced adequate proof of death in an attempt to recover under the policy. During trial, this Court admitted the Somali documents as proof of Mrs. Mohamud's compliance with the terms of the policy. Nowhere within either policy does the insurance company require that the death certificate be certi-

---

3. In a letter dated June 25, 1998, Monumental Life stated:

> We require an actual certified death certificate as primary proof of loss. Because of the discrepancies in the information provided on the documents submitted, we require the following:
> 1. Copy of Mr. Mohamud's [sic] passport.
> 2. Copy of visa to enter the United States
> 3. Documentation showing where Mr. Mohamud [sic] was buried.

> 4. Copy of the official investigative report filed as a result of this incident.
> 5. Copy of Mr. Mohamud's [sic] birth certificate.
> Depending on the documentation submitted, it may be necessary to conduct a further investigation.

(Def. Ex. 7 at 207.)

fied by a government recognized by the United States to be in existence. This Court must construe the insurance contract strongly against the insurer and in favor of the insured. *See General Accident, Fire & Life Assurance Corp. Ltd. v. Murray*, 120 Va. 115, 90 S.E. 620, 624 (1916). This Court refuses to imply a United States government recognized death certificate as a prerequisite to recovery under the insurance contracts.

Only a reasonable standard of proof is required to make a preliminary showing of proof of death. Monumental Life cannot make recovery under its policies contingent on the ability of its investigators to investigate proof of death. This Court acknowledges that on at least three occasions, Monumental Life attempted to hire investigators to go into Somalia and assist it in the investigations of the Insured's death claim.[4] However, it was unable to secure verifiable proof of the information contained within the death certificate. Despite this predicament, Monumental Life never attempted to contact the physician who declared the Insured's cause of death or the Insured's family members in Somalia to verify the submitted proof—even though Monumental Life was provided with information on how to contact such parties. Essentially, Monumental Life states that it could not secure its own investigators to verify the proof of death in Somalia, and therefore, the Insured is not entitled to recover under the policies. Such a result is preposterous and unreasonable. Under such terms no person would be able to recover under the policies if they were killed while traveling to a country where Monumental Life's investigators were unwilling to travel. This Court must analyze the terms of the policy in a reasonable manner. This Court will not presume that the parties intended that the Insured produce the impossible.

The question remains what proof, if any, would satisfy Monumental Life that the Insured died in Somalia. Production of an insured decedent's body is not essential to positive proof of death. *See* COUCH ON INSURANCE § 189:67 n. 21. Moreover, even if Monumental Life's investigators went to the grave site in Somalia, they were not prepared to open the grave and perform DNA testing to confirm that the Insured was dead. During trial, the Court inquired of Monumental Life what, if anything, an investigator would do in Somalia to investigate the claim. The Court was met with silence. The Court notes that in the claims file there was a letter from Monumental Life to an Investigator stating,

> We need to confirm that the deceased is our insured, as well as obtain[ ] all information concerning the exact cause and manner of death, including any newspaper clippings, official reports filed on this incident and any hospital records.

4. Monumental Life contacted John J. Healy, of John J. Healy Investigations of New York City, who investigated major insurance claims throughout the world for over 30 years. On two occasions, once in February 1999 and again in June 2000, Monumental Life's counsel contacted Healy for Healy to review Mrs. Mohamud's claim file and assist Monumental Life in the investigation of her overseas death claim. Healy contacted people throughout the world, including people in Kenya, South Africa, and Nigeria, to determine if anyone would be willing to travel into Somalia to assist in Monumental Life's investigation of Mrs. Mohamud's claim. Healy did not locate anyone anywhere who was, or is currently, willing to travel to Somalia. On December 18, 1997, Monumental Life asked Nancy York of Financial and Security Lines for First Services to perform a foreign death claim investigation of the Insured. When York contacted her representative in Kenya, she was told that the file lacked sufficient information to make a determination as to the feasibility of any further investigation on the claim.

We also need to know how the death was reported, who identified the body and how identification was made.

(Def. Ex. 7 at 43.) Mrs. Mohamud provided all of this information to Monumental Life. (Def. Ex. 7 at 203–206, 255–260, 271.) Therefore, Monumental Life had the information it needed to enable it to adequately assess its rights and liabilities, advise it of the nature and extent of loss, and allow it to adequately protect itself against fraud. Moreover, there was no evidence offered at trial that any of the documents produced were fraudulent.

Despite the abundance of information produced by Mrs. Mohamud, Monumental Life argues that it is entitled to judgment as a matter of law because Mrs. Mohamud has not furnished sufficient admissible proof of death to recover under the policy. Specifically, Monumental Life focuses on the insufficiency of the death certificate to show preliminary proof of death. Monumental Life bases such assertion on the reasoning found within a First Circuit case interpreting Massachusetts law. *See Minh Tu v. Mutual Life Insurance Co.*, 136 F.3d 77 (1st Cir.1998). In *Minh Tu*, the court considered the insurance company's motion for summary judgment and dismissed the insured's case for failure to present sufficient preliminary proof that the insured died in Cambodia. The insurance policy at issue required a claimant to submit "due proof" in order to qualify for payment under the policy. *See id.* at 79. Under Massachusetts law, due proof is "that proof furnished to the insurer [that] shows on the whole 'that the claim is of a class within the protection of the policy, so that the insured reasonably might pay the claim.'" *Id.* (citing *Washington v. Metropolitan Life Ins. Co.*, 372 Mass. 714, 363 N.E.2d 683, 685 (1977)). The court held that due proof satisfied preliminary requirements of notice; however, the claimant must prove notice of death by admissible evidence if the insurance company denies death. *See id.* at 79–80. The claimant submitted a death certificate and a notice of death prepared by a government security service officer in Cambodia ("Cambodian documents"). *See id.* at 79. The district court found that the documents could not be properly authenticated either by independent evidence under Federal Rule of Evidence ("FRE") 901(a) nor were they self-authenticating under FRE 902(3). The court granted the insurance company's motion for summary judgment because the other evidence presented could not show due proof of death. The court noted that, beyond the Cambodian documents, the claimant could only offer proof to a jury that the insured had gone to a village near the Cambodian border, declared her intention to visit Cambodia, and had not been heard of since. *See id.* at 81. The court granted the insurance company's motion for summary judgment and held that the insured did not present proof sufficient to send the claimant's claim to the jury.

Under the reasoning in *Minh Tu*, Monumental Life argues that Mrs. Mohamud did not offer sufficient preliminary proof of death because the furnished death certificate cannot be admitted into evidence and cannot be properly authenticated under the Federal Rules of Evidence. Monumental Life's reliance on this case is flawed. *Minh Tu* is distinguishable from this case both factually and legally.

The reasoning in Mihn Tu is based entirely upon Massachusetts' interpretation of "due proof" of loss. Monumental Life does not require due proof of loss in order to recover under its policies. Moreover, Monumental Life fails to assert any Virginia authority or binding legal authority supporting the notion that the admissibili-

ty of a death certificate is a prerequisite for a Court to decide as a matter of law that the Insured is not entitled to recovery under a life insurance policy. In Virginia, no precise standard exists for the Court to determine the sufficiency of proof of loss. *See, e.g., Security Bank of Richmond,* 71 S.E. at 648–649 (looking to the contents of the statements contained within a sworn statement by the beneficiary to determine whether satisfactory proof of loss was produced); *Metropolitan Ins. Co. v. Rutherford,* 98 Va. 195, 35 S.E. 361, 362 (1900) (finding that statements produced by the insured in the blanks of the insurance policy designated for proof of death were sufficient for jury to hear the merits of the claim, and further referencing the insured's ability to present proof at trial to show that the statements furnished were true).[5] This Court finds no reason to impose the Massachusetts standard for due proof upon Mrs. Mohamud in order to show preliminary proof of loss.

*Minh Tu* is further distinguished from this case because it was decided as a motion for summary judgment while, in this case, the Court had the benefit of looking at the claims file and weighing the credibility of the evidence and testimony presented. Unlike *Minh Tu,* the inadmissibility of the Somali death certificate as a means of proof of the facts stated therein does not end the Court's inquiry into the sufficiency of the proof submitted. In *Minh Tu,* absent the Cambodian documents the Insured did not have any evidence that would support a conclusion of death. In this case, Mrs. Mohamud presented an abundance of admissible documentation in support of her claims for recovery. Spe-

cifically, Mrs. Mohamud provided Monumental Life with a statement from a Somali physician who certified that the Insured died due to a gunshot wound to his chest, notice that the Insured was buried free of charge in Sh. Ali Abdulle Cemetery in Somalia, and affidavits from persons stating that the Insured died in Somalia on July 1, 1997, and that they attended the Insured's funeral in Mogadishu, Somalia. (Def. Ex. 7 at 206, 240, 274–77.) Unlike in *Minh Tu,* a fact finder could find, and this Court does find, that this evidence is sufficient to demonstrate proof of death under the policy. Under the circumstances of this case, Mrs. Mohamud produced adequate documentation to show sufficient preliminary proof of death.

### 2. Group Mortgage Accidental Death Insurance Policy

Mrs. Mohamud has presented sufficient preliminary proof of loss under the Group Mortgage Accidental Death Insurance Policy. Similar to the mortgage life insurance policy, the accidental death insurance policy provides for proof of death in the form of a death certificate, notification from the mortgage lending company of the outstanding balance, and any other items necessary for the company to investigate the claim. (Def. Ex. 6 at 9.) For the reasons stated above, Mrs. Mohamud has met these requirements.

▮▮▮ The accidental death insurance policy also provides that Monumental Life "will pay the Accidental Death Benefit shown ... when [it] receive[s] proof that the Insured die[d] as a result of an Injury, provided death occurred within 365 days of

---

**5.** *Cf* COUCH ON INSURANCE § 186:25 (observing that "from an evidentiary standpoint, the proof of loss must be in proper evidentiary form (i.e., signed by the insured, dated, and witnessed or notary as necessary)."); *See id.* § 189:52–53 (observing that the information

supplied in the proof of loss should be supported by evidence in admissible form, however, if insufficient proof is submitted the insurance company may request further information for the claimant to supply).

the injury." (Def. Ex. 6 at 4.) Under the policy, injury means "bodily injury caused by an accident, independently of all other causes." (Def. Ex. 6 at 3.) An accident is "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event." *Harris v. Bankers Life and Casualty Co.*, 222 Va. 45, 278 S.E.2d 809, 810 (1981) (citing *Ocean Accident & Guarantee Corp. v. Glover*, 165 Va. 283, 182 S.E. 221, 222 (1935)). When a death occurs from unexplained, violent, and external means, such an accident may be presumed to be covered by an insurance policy providing double liability for accidental death. *See* 10B MICHIE'S JURISPRUDENCE OF VIRGINIA AND WEST VIRGINIA, *Insurance* ¶ 112 at 73 (1995). Documentation asserting a feasible and uncontested accidental theory of death is generally an acceptable means of demonstrating preliminary proof of death by accident. *See, e.g., Life and Casualty Ins. Co. of Tenn. v. Daniel*, 209 Va. 332, 163 S.E.2d 577, 579–580 (1968) (stating that a determination on the testimony introduced at trial was a question for the jury and making no reference to preliminary proof submitted).

The overwhelming documentation provided to Monumental Life demonstrates that the Insured died as a result of bodily injury which was caused by an accident. The claims forms provided by Monumental Life state that if the death was due to an accident, the claimant would have to provide a full explanation in the space provided and attach a police incident report and newspaper articles if available. (Def. Ex. 7 at 218.) On the claims form submitted, Mrs. Mohamud stated that the Insured was killed by a gunshot wound in Mogadishu Somalia on July 1, 1997. Mrs. Mohamud provided Monumental Life with a certificate from a hospital in Somalia attesting to the Insured's manner of death on July 1, 1997, and Mrs. Mohamud further sub-

mitted newspaper articles discussing how he died. No evidence submitted or found by Monumental Life disputes these assertions that the Insured died due to a gunshot wound. A gunshot wound is clearly a bodily injury. Death by a gunshot wound is a violent and external means of injury. Moreover, no indication exists that the Insured had any foresight or expectation to die while in Mogadishu, Somalia. Therefore, this Court holds Mrs. Mohamud submitted sufficient preliminary proof of an accidental death.

■ The legal effect of proof of preliminary loss is a question of law for the court. *See Security Bank of Richmond*, 71 S.E. at 649. This Court finds that Monumental Life required Mrs. Mohamud to produce a long list of items as preliminary proof of loss. Mrs. Mohamud provided all of the requested items to the best of her ability. All of the documents submitted overwhelmingly support the notion that the Insured died on July 1, 1997, in Mogadishu, Somalia, due to a gunshot wound. This evidence is sufficient preliminary proof for recovery under the two policies. Therefore, Mrs. Mohamud has the right to recover under a breach of contract theory as long as the evidence adduced at trial shows the insured died on July 1, 1997, due to an accident. *See, e.g., General Accident, Fire & Life Assurance Corp. Ltd. v. Murray*, 120 Va. 115, 90 S.E. 620 (1916) (looking to all evidence introduced at trial to determine whether accidental death occurred).

**B. Recovery Under the Life Insurance Policies**

■ A right to recover on a policy must be established by a preponderance of the evidence presented in the case. *See id.*, 90 S.E. at 624. In order for the claimant to recover, the burden is upon the

claimant to bring herself within the provisions of the contract of insurance. *See id.* "[W]hen death occurs it is to be presumed to be the result of natural dissolution rather than of accidental injury." *Id.* Under an accidental death policy, the burden is on the plaintiff to show the death of the insured and that the death was caused by violent, accidental, and external means. *See id.* at 625; *Life and Casualty Ins. Co. of Tenn.,* 163 S.E.2d at 584 (acknowledging that proof of death by external and violent means establishes death by accident). An accident is a sudden and unexpected event that takes place without one's foresight or expectation. *See Harris,* 278 S.E.2d at 810. The burden is on the insurance company to show that the claimant falls within an exception under the policy to prevent recovery for accidental death. *See Jefferson Standard Life Ins. Co. v. Clemmer,* 79 F.2d 724, 731 (4th Cir.1935) (holding that the burden is on the plaintiff to show that death resulted by external violence, and the defendant insurance company has the burden of presenting any defense (in *Clemmer* the defense was suicide)).

The preponderance of the evidence shows that Mrs. Mohamud is entitled to recovery under the insurance contracts. Specifically, the evidence shows that (1) the Insured is dead, (2) the Insured's death was accidental, and (3) his death was not the result of an act of war.

### 1. The Insured is dead

██ The credible evidence shows that the Insured is dead. Ms. Faduma Ahmed Mohamud, the claimant's sister, lives in Mogadishu, Somalia and flew into the United States to testify at this trial. She testified that she saw the Insured dead on a bed at his home and covered with a cloth. She helped to prepare the Insured's funeral arrangements and attended his funeral, where she saw his body buried. This Court finds the testimony of Ms. Faduma Mohamud credible that the Insured is dead. Monumental Life submitted no evidence to contradict her testimony.

### 2. The Insured died by accidental means

The evidence submitted demonstrates that the Insured died by accidental means and not as a result of an act of war. Mr. Eng Xasan Dhiisi flew in from Somalia to testify that he witnessed the death of the Insured. Mr. Dhiisi testified that he knew the Insured because they would often meet for coffee in the Fiat Cafeteria in Mogadishu, Somalia. Mr. Dhiisi testified that on July 1, 1997 he saw the Insured in the coffee shop with some other people. Mr. Dhiisi testified that someone entered the cafeteria and began shooting. Mr. Dhiisi stated that the shooting lasted for about 45 seconds, and stated that he fell to the ground and covered his head when the shots were fired. When the gunfire was over, Mr. Dhiisi saw three dead bodies and three wounded people. Mr. Dhiisi testified that he saw the Insured lying in a pool of blood with gunshot wounds in his chest and abdomen. Mr. Dhiisi was approximately 10 steps away from the Insured when he saw the Insured lying on his back and could see that he was not breathing. This Court finds the testimony of Mr. Dhiisi credible. The description of the Insured's death shows that he died by violent and unexpected means. Moreover, this Court finds that the Insured did not expect to be gunned down while drinking coffee in a coffee shop. The evidence shows the shooting was undesigned, sudden, and unexpected. Monumental Life submitted no evidence to contradict this testimony. Therefore, Mrs. Mohamud met her burden of showing that the death was accidental.

### 3. The death did not result from war

Monumental Life has not met its burden to show that the Insured died due to an act

of war. The accidental death insurance policy specifically prohibits recovery for death as a result of "declared or undeclared war." (Def. Ex. 6 at 5.) Monumental Life asserts that if the insured was in fact killed in the coffee shop in the manner described, then such killing resulted from an act of war, and Mrs. Mohamud cannot recover under the policy. Monumental Life provides as proof of the existence of a war the testimony of investigators John Healy and Nancy York who attempted to secure someone to enter Somalia to investigate Mrs. Mohamud's claim. They state that they would not enter Somalia, and other investigators they contacted would not enter Somalia either, because of the random violence and civil war of Somalia. The evidence also demonstrated that random violence and inter-clan rivalry existed in Somalia that often resulted in the unexplained disappearance and deaths of people within that country. This evidence is not sufficient to prove that the Insured died as a result of an act of war. Monumental Life has only demonstrated that Somalia was in a state of chaos at the time the Insured was gunned down. This Court does not find that given the circumstances in Somalia that his death resulted from war. If this Court were to make such a finding, then any random shooting, even in this country, could be deemed to have resulted from an act of war. Random shootings in schools, daycare centers, and office buildings occur throughout this country with increasing frequency. Moreover, many people die violent deaths in the United States due to drug related crimes, and many people state that we are in a "war on drugs." Nonetheless, a person's death as a result of being shot by a drug

dealer is not considered the result of an act of war. The uncontradicted evidence shows that the Insured was killed by a random shooter while in a coffee shop in Mogadishu, Somalia. Monumental Life has the burden of proving that the Insured's death falls within one of the exceptions within the policy. This Court holds that Monumental Life has not met its burden of proving that the insured's death was a result of an act of war.

## CONCLUSION

This Court holds that Mrs. Mohamud has shown by a preponderance of the evidence that she complied with the requirements of the insurance contract. First, this Court finds that Mrs. Mohamud has presented sufficient preliminary proof of death to entitle the Insured's estate to recover under the policy. Second, this Court finds that, after considering all of the admissible evidence, the preponderance of the evidence shows that the Insured died as a result of gunshot wounds in Mogadishu, Somalia on July 1, 1997. Third, the Court finds that the Insured's death was an accident as provided under the policy. Moreover, the Court finds that the Insured did not die by an act of war. Therefore as Administratrix of the Insured's estate, Mrs. Mohamud is entitled to recovery under the terms of the two insurance policies at issue. Monumental Life's failure to pay on the contract breaches its obligation to provide benefits under both policies. Accordingly, judgment is entered in favor of Plaintiff on the breach of contract claim. Plaintiff is entitled to recover $86,637.63 under each policy for a total of $173,275.26.[6] For the

---

**6.** This Court denies Mrs. Mohamud's request to award her pre-judgment interest and attorney's fee. Mrs. Mohamud is not entitled to pre-judgment interest because a legitimate controversy existed concerning whether Mrs.

Mohamud could recover under the policies. *See, e.g., Reid v. Ayscue,* 246 Va. 454, 436 S.E.2d 439, 442 (1993) (holding that the plaintiff was not entitled to pre-judgment interest because a legitimate controversy exist-

foregoing reasons, this Court finds in favor of the Plaintiff.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record.

ed concerning the issue of negligence in a previous wrongful death action).

In addition, Mrs. Mohamud is not entitled to recover attorney's fees. Under section 38.2–209 of the Virginia Code a court shall not award costs and attorney's fees unless the court determines that the insurer did not act in good faith in refusing to pay a benefit to the insured. *See* VA CODE § 38.2–209; *see also Joseph P. Bornstein Ltd. v. National Union Fire Ins. Co.*, 828 F.2d 242 (4th Cir.1987). Monumental Life initially refused to pay the benefit under the policies because it believed Mrs. Mohamud's claim was unverified. Monumental Life had legitimate reasons to question Mrs. Mohamud's claim because of her background. Mrs. Mohamud was a former law firm bookkeeper who was convicted of passing a forged security in connection with her embezzlement of funds from the firm's payroll bank account. Monumental Life showed that one month prior to the Insured's death, Mrs. Mohamud agreed to plead guilty to one count of forged security in violation of 18 U.S.C. § 513 and agreed to make full restitution to the victim in the amount of $324,358.74. (Def.Ex. 17.) Moreover, days prior to Mrs. Mohamud filing a claim with Monumental Life, Mrs. Mohamud was found guilty of one count of forged security in violation of 18 U.S.C. § 513 and ordered to make restitution to the victim in the amount of $239,289.20. (Def. Ex. 16.) This evidence shows that Monumental Life had reason to question Mrs. Mohamud's claim. Therefore, Monumental Life properly protected itself by investigating Mrs. Mohamud's claim in order to determine whether the claim was valid. Ultimately, the preponderance of the evidence shows that Mrs. Mohamud's claims were not fraudulent. Nonetheless, this Court finds that Monumental Life did act in good faith to protect itself against a potentially fraudulent claim. Therefore, Mrs. Mohamud is not entitled to attorney's fees under section 38.2–209 of the Virginia Code.